**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **AMANDA THOMPSON,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **Case No. CIV 17-414-RAW-KEW** |
| ) | |
| **DEBBIE ALDRIDGE,** ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

This matter comes before the Court on a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner Amanda Thompson ("Thompson") is a prisoner proceeding *pro se*. She is currently in the custody of the Oklahoma Department of Corrections ("ODOC") and confined in the Mabel Bassett Correctional Center in McLoud, Oklahoma. She challenges the revocation, in Marshall County District Court (Case No. CF-2007-155), of a suspended sentence for First Degree Manslaughter.

Thompson filed the instant Petition for Writ of Habeas Corpus (Dkt. 1), challenging the revocation of her suspended sentence on the following grounds:

   I.   The trial court abused its discretion by denying Thompson the opportunity to confront witnesses in violation of her statutory and due process rights.

   II.  The trial judge should not have presided over her case because he was biased.

   III. The trial court abused its discretion in revoking the suspended sentence based on incompetent evidence.

   IV.  The trial court abused its discretion by admitting improper victim impact testimony.

    V.      Thompson received ineffective assistance of counsel in the revocation proceedings.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

Thompson pleaded guilty to Manslaughter in the First Degree in the District Court of Marshall County Oklahoma on May 2, 2012. The court sentenced her to a term of fifteen years imprisonment, but suspended the sentence for all but the first four years, which amounted to time Thompson had already served. As a result, she was released on probation (Dkt. 24, Exh. 5).

On October 14. 2015, the State of Oklahoma filed a Motion to Revoke Suspended Sentence in the trial court, alleging that Thompson had violated the terms of her probation. The state alleged that:

1. Thompson committed the crime of Larceny of Merchandise on August 13, 2015, in Carter County, Oklahoma;

2. Thompson gave birth to a baby that tested positive for marijuana and hydrocodone on September 3, 2015; and

3. Thompson herself tested positive for marijuana on September 21, 2015.

(Dkt. 24, Exh. 5).

The trial court held a hearing on the motion to revoke on December 2, 2015. The State of Oklahoma presented witness Christy Tippett, an Oklahoma Department of Human Services ("DHS") employee. Tippett testified that she first had contact with Thompson while working on a DHS child-welfare case concerning two of her children. Tippett

---

[1] Thompson's *pro se* petition raised eight claims (Dkt. 1). Upon Respondent's Motion to Dismiss for Failure to Exhaust State Court Remedies (Dkt. 15), the Court determined that Thompson could proceed on the five claims stated herein, because each was raised in the direct appeal to the Oklahoma Court of Criminal Appeals. The Court directed Thompson to either dismiss the unexhausted claims, continue with all claims and risk dismissal of the entire petition, or voluntarily dismiss the petition in its entirety (Dkt. 18). Thompson chose to dismiss the unexhausted claims and proceed with the exhausted claims (Dkt. 19). Thus, the Court addresses only the five exhausted claims in this opinion and order.

testified that in the course of that investigation, DHS conducted two drug tests on Thompson: a hair follicle test on May 26, 2015, which was positive for marijuana, and a "random UA" on September 21, 2015, which was positive for marijuana and Xanax. In addition, Tippett testified that a meconium test performed on Thompson's newborn baby on September 3, 2015, was positive for barbiturates, opiates, and marijuana. The State also submitted a certified copy of Thompson's larceny charge in Carter County. Thompson's attorney objected to the admissibility of the drug test evidence because the tests were performed by DHS, not the ODOC. The trial judge overruled those objections.

Petitioner Thompson also testified at the revocation hearing. She acknowledged that her infant son had tested positive for barbiturates, opiates, and marijuana at birth and stated that she had a prescription for those medications while she was pregnant. She submitted an exhibit in support. Thompson also testified that she smoked marijuana as a coping mechanism, and her positive drug tests reflected that. She submitted exhibits demonstrating a negative drug test three weeks before the baby was born and participation in PTSD counseling. Thompson asked the trial court to allow her to remain on probation and enter drug treatment or participate in drug court.

Based on the evidence presented by the State, the testimony of Ms. Tippett, and the admissions Thompson made in her testimony, the trial court found that Thompson had violated the terms of her probation. After preparation of a presentence report, which Thompson requested at the December 2015 hearing, the trial court held the sentencing portion of the hearing on January 27, 2016. The State presented victim impact testimony of John Bridgeman, the brother and uncle of the victims in the underlying manslaughter case, and Kenneth Mashore, the husband and father of the victims. After hearing

arguments of counsel for Thompson and for the State of Oklahoma, the trial court revoked Thompson's eleven-year suspended sentence in full, remanding her to the custody of the ODOC.[2]

With assistance of counsel, Thompson filed an appeal of the trial court's revocation. The OCCA affirmed on March 22, 2017 (Dkt. 24, Exh. 4). Thompson raised five issues on appeal:

   I.   The trial court abused its discretion by violating Thompson's statutory and due process rights to confront adverse witnesses.

   II.  The trial court abused its discretion in revoking Thompson's suspended sentence based on incompetent evidence in violation of her due process rights under the United States Constitution and the Oklahoma Constitution.

   III. The trial court abused its discretion by admitting improper victim impact testimony at the revocation sentencing hearing, violating her due process rights under the United States and Oklahoma Constitutions.

   IV.  The trial court erred in failing to recuse itself from the case on the basis that the trial judge's son was the prosecutor in the misdemeanor larceny case which was a basis for the revocation of the suspended sentence.

   V.   Thompson received ineffective assistance of counsel in violation of the United States and Oklahoma Constitutions.

## STANDARD OF REVIEW

Although Thompson raised her claims in a petition pursuant to 28 U.S.C. § 2254, her claims challenge the revocation of her suspended sentence. Revocations of a suspended sentence are properly raised under 28 U.S.C. § 2241 and not § 2254 because they are challenges to the execution rather than the validity of a sentence. *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1041 (10th Cir. 2017) (citing *Montez v. McKinna*, 208 F.3d 862, 865 (10th

---

[2]This statement of facts is summarized from the facts detailed in the OCCA's opinion affirming the revocation of her suspended sentence (Dkt. 24-4).

Cir. 2000)). Accordingly, the Court construes Thompson's petition as arising under 28 U.S.C. § 2241.

In evaluating revocation claims under § 2241, the Court should not disturb revocation determinations "unless there is a clear showing of arbitrary and capricious action or an abuse of discretion." *McIntosh v. United States Parole Commission*, 115 F.3d 809, 813 (10th Cir. 1997) (*quoting Sotelo v. Hadden*, 721 F.2d 700, 702 (10th Cir. 1983)). A factual determination should be upheld so long as a "rational basis" in the record exists to support the determination. *Curtis v. Chester*, 626 F.3d 540, 544 (10th Cir. 2010); *see also McIntosh*, 115 F.3d at 813.

The Court notes that in each claim in the petition, Thompson alleges error by the state court on the basis of Oklahoma statutes and the Oklahoma Constitution. "Federal habeas relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); s*ee also Montez*, 208 F.3d 865. In reviewing a federal habeas petition, the Court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. at 68 (citing 28 U.S.C. §2241). Thus, as a preliminary matter, the Court will not consider Thompson's claims grounded solely in state law.

### DISCUSSION AND ANALYSIS

### Ground I:  Witness Testimony and Hearsay Evidence

Thompson alleges in her first ground for habeas relief that the trial court abused its discretion by its failure to allow her to confront witnesses, in violation of statutory and

5

constitutional law. She raised this claim on appeal to the OCCA, arguing specifically that the documents introduced during the testimony of Christy Tippett were hearsay.[3]

The OCCA determined the record contained "substantial direct evidence of probation violations" and therefore, Thompson's "suspended sentence was clearly not revoked solely upon the basis of the evidence [she] claims was hearsay." The OCCA also held that under Oklahoma law revocation of a suspended sentence is not a stage of a criminal prosecution to which "the full panoply of rights due a defendant in a criminal prosecution" applies. The OCCA thus concluded that "[d]ocumentary evidence of [Thompson's] positive drug tests, State's Exhibits 1, 2, and 4, and the certified copy of her plea of guilty to the larceny charge in Carter County, State's Exhibit 3, seem to clearly satisfy the relaxed due process standards in probation revocation proceedings." The OCCA thus denied Thompson's first claim (Dkt. 24-4, pp. 6-7).

The Due Process Clause "imposes substantive limits on the revocation of conditional liberty." *Leatherwood*, 861 F.3d at 1045 (quoting *Black v. Romano*, 471 U.S. 606, 610 (1985)). These limits are violated when a revocation is "fundamentally unfair or arbitrary." *Leatherwood*, 861 F.3d at 1045 (quoting *Bearden v. Georgia*, 461 U.S. 660, 666 (1983)). A substantive due process violation of this nature is rare and must be "arbitrary in the constitutional sense; that is, it must shock the judicial conscience." *Leatherwood*, 861 F.3d at 1046 (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1179-80 (10th Cir. 1999)); *see also Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) (recognizing that a determination of state law may be "so

---

[3]*Pro se* pleadings should be "liberally construed" and held to "less stringent standards that pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Accordingly, the Court will construe Thompson's first ground for habeas relief to include the hearsay claims raised on appeal.

6

arbitrary or capricious as to constitute an independent due process . . . violation").[4] Due process also demands a "rational basis in the record" for factual determinations. *Curtis v. Chester*, 626 F.3d 540, 544 (10th Cir. 2010).

It is well-settled, as noted by the OCCA, that the revocation of a suspended sentence, parole, or supervised release is "not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Revocation hearings still must "satisfy minimal due process demands." *United States v. Henry*, 852 F.3d 1204, 1207 (10th Cir. 2017). That requires, at minimum, an opportunity for a hearing (including notice of the hearing) and a judicial determination, on the basis of probable cause, that leads to a "final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Morrissey*, 408 U.S. at 487-88. The revocation process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* at 489.

A tribunal may even consider hearsay evidence in a revocation hearing, so long as the evidence is "sufficiently reliable." *Curtis*, 626 F.3d at 545 (citing *Kell v. United States Parole Commission*, 26 F.3d 1016, 1021 (10th Cir. 1994)). The Tenth Circuit provides guidance as to what constitutes "reliable hearsay," including, *inter alia*, "(1) The conventional substitutes for live testimony (e.g. affidavits, depositions, and documentary evidence), (2) statements falling under an established exception to the hearsay rule, (3) statements corroborated by detailed police investigative reports, and (4) statements

---

[4]The due process protections in a case involving revocation of a suspended sentence are the same as those afforded to revocations of probation, parole, or supervised release. The Court may therefore rely on cases involving any of those proceedings in reviewing for due process violations alleged in a habeas petition. *See Leatherwood*, 861 at 1044 (*citing Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)).

corroborated by the releasee's own statements." *Curtis*, 62 F.3d at 545 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 5 (1973)).

> Indeed, the Supreme Court and this one have long allowed hearsay in supervised release proceedings: sometimes the government will use hearsay in arguing for revocation; sometimes the defendant will use hearsay in arguing against revocation (. . .). In neither event are confrontation or due process rights necessarily denied, for under settled precedent the Confrontation Clause of the Sixth Amendment does not apply to supervised release revocation proceedings and the due process guarantees associated with these proceedings are "minimal."

*United States v. Henry*, 852 F.3d 1204, 1206 (10th Cir. 2017) (citing *Morrissey*, 408 U.S. at 485, 489).

As stated above, in a habeas proceeding, this Court reviews the revocation of a suspended sentence to determine whether the state court's determinations were arbitrary, capricious, or so fundamentally unfair as to violate due process. A state court's factual findings will pass constitutional muster so long as they are supported by a rational basis in the record.

At the revocation hearing, the Court heard testimony and admitted evidence demonstrating that Thompson had violated the terms of her suspended sentence. Specifically the trial court relied on Thompson's positive drug tests; her newborn's meconium sample that was positive for marijuana, bartiturates, and opiates; and Thompson's plea of guilty of the offense of larceny. These findings were supported by exhibits introduced through the testimony of Ms. Tippett, the DHS employee, and Thompson's own testimony which corroborated the positive drug tests, the positive meconium test, and the larceny charge. The OCCA affirmed the trial court's revocation on the basis that "substantial direct evidence" supported revocation under the "relaxed due process standards" that apply to revocations of a suspended sentence.

This Court finds that the OCCA's determinations were not arbitrary, capricious, or so fundamentally unfair as to deny Thompson's due process rights. The trial court did not rely solely on Ms. Tippett's testimony in finding revocation of Thompson's suspended sentence warranted. The state also produced exhibits of two positive drug tests, a positive test for Thompson's newborn baby, and a certified copy of the guilty plea on the misdemeanor larceny charge. In addition to these exhibits, Thompson's attorney cross-examined Ms. Tippett, the source of the alleged hearsay. That Thompson's attorney cross-examined Ms. Tippett belies Thompson's claim because that cross-examination was the confrontation of the sole witness. Moreover, Thompson herself testified at the hearing, corroborating the testimony of Ms. Tippett regarding the drug tests, and admitted that she did, in fact, attempt to steal food from a local Wal-Mart.

Given the relaxed due process standards allowed in a revocation proceeding, the corroborating evidence, and Thompson's own admissions, the Court finds that the revocation of Thompson's suspended sentence did not violate her due process protections. The trial court's findings, affirmed on appeal, were not arbitrary, capricious, or fundamentally unfair. They were supported by an adequate basis in the record. Accordingly, Thompson's Ground I is DENIED.

**Ground II:  Judicial Bias**

Petitioner Thompson alleges in Ground II that Judge Coppedge, the trial court judge, should have recused himself from presiding over her revocation hearing because his son, Jack Coppedge, was the prosecutor in the Carter County larceny case.

The OCCA determined that Thompson did not invoke the state's procedure for seeking disqualification of Judge Coppedge. It further reasoned that regardless, Thompson did not show any actual prejudice by Judge Coppedge (Dkt. 24-4).

"Due process guarantees 'an absence of actual bias' on the part of a judge." *Williams v. Pennsylvania*, 136 S.Ct. 1899, 1905 (2016) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). Constitutional intolerability occurs when a judge is "unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Nichols v. Sullivan*, 867 F.2d 1250, 1254 (10th Cir. 1989) (quoting *Taylor v. Hayes*, 418 U.S. 488, 501 (1974)). Judges should recuse themselves when "the likelihood of bias" is "too high to be constitutionally tolerable." *Williams*, 136 S.Ct. at 1903 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009)) (other citations omitted).

In the Tenth Circuit, a defendant seeking habeas relief may show judicial bias either by demonstrating actual bias or by showing that "circumstances were such that an appearance of bias created a conclusive presumption of actual bias." *Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). Courts proceed on the presumption that judges are capable of overcoming influences and "rendering evenhanded justice." *Id.* at 1479 (quoting *Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1373 (7th Cir. 1994)).

On review of a habeas petition a court must determine whether the circumstances of the case "were such that the incentive to be biased was sufficiently strong to overcome the presumption of judicial integrity." *Fero*, 39 F.3d at 1479. Courts view actual bias through an objective lens, asking whether an "average judge" under the factual circumstances presented is likely to be neutral or whether there exits an unconstitutional "potential for bias." *Williams*, 136 S.Ct. at 1905 (*quoting Capterton*, 556 U.S. at 872).

10

Federal courts hold that under certain factual scenarios the probability of actual bias is "too high to be constitutionally tolerable." *Fero*, 39 F.3d at 1479 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). These include cases "in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him." *Id*. On the other hand, a mere family relationship, even when a relative has a financial interest in the outcome, is insufficient to overcome the presumption of judicial integrity. *Fero*, 39 F.3d 1479. In this context, Courts distinguish between kinship and financial interests. *Id.* (finding that judge's brother-in-law's financial gain in civil action based on underlying criminal case, without more, was not sufficient to show bias). *See also Fero*, 39 F.3d at 1479 (citing *Dyas v. Lockhart*, 705 F.2d 993, 996 (8th Cir. 1983)) (finding no actual bias where trial judge was uncle of prosecuting attorney and brother and father of two deputy prosecuting attorneys).

Thompson alleges that Judge Coppedge, the trial judge in her underlying manslaughter case and revocation of her suspended sentence, is the father of Jack Coppedge who served as the Assistant Prosecuting Attorney in plea of guilty to larceny in Carter County. She thus argues that Judge Coppedge was biased against her because he used the Carter County offense as one basis for revocation of her suspended sentence.[5] Without more, Thompson has made an insufficient showing of either presumed or actual bias by Judge Coppedge. There is nothing in the record to demonstrate that Judge Coppedge was even aware of the role his son played in Thompson's guilty plea; it was not mentioned at the hearing.

---

[5] In the OCCA, Thompson included as an exhibit in support of this claim a newspaper article indicating that Jack Coppedge is Judge Coppedge's son.

11

Even if the Court on habeas review were to presume some implicit bias because Judge Coppedge and Assistant Prosecutor Coppedge are related, the error is harmless. Thompson makes no showing that the family relationship led to any pecuniary gain for Judge Coppedge, nor does she show a prior history of abuse or criticism involving Judge Coppedge.  Absent these or similar specific scenarios in which bias would be presumed, Thompson cannot show unconstitutional bias.  Furthermore, the prevailing legal standards are clear that a mere family relationship between judge and prosecutor is insufficient to overcome the presumption of judicial integrity.  Thus, this Court finds that the OCCA's determination that there was no prejudicial bias on the part of Judge Coppedge survives due process scrutiny.  The OCCA's finding was not arbitrary and capricious or without basis in the record.  Accordingly, Thompson's Ground II is DENIED.

**Ground III:  Sufficiency of the Evidence**

Thompson alleges that the trial court relied on incompetent evidence in revoking her suspended sentence.  Liberally construing her claim, *see Estelle v. Gamble*, 429 U.S. at 106, Thompson appears to be challenging the sufficiency of the evidence, as a whole, upon which the revocation was supported.  The OCCA summarily denied this claim, finding that it had thoroughly discussed the sufficiency of the evidence in its rejection of her claims of prejudicial hearsay (Dkt. 24-4, p. 8).

As noted above, revocations of conditional liberty are not subject to the full protections of the due process clause as are stages in a criminal proceeding.  The relaxed due process standards require only that the revocation judge's findings are not arbitrary or capricious and are fundamentally fair. *See Leatherwood*, 861 F.3d 1045-46.  There must also be a basis in the record for the judge's factual findings. *See Curtis*, 626 F.3d at 544.

12

Under Oklahoma law, "violation of even one condition of probation is sufficient to justify revocation of a suspended sentence." *Tilden v. Oklahoma*, 306 P.3d 554, 557 (Okla. Crim. App. 2013).

In its discussion of Ground I of Thompson's habeas petition, the Court described in detail the reasons why the evidence presented at Thompson's revocation hearing was sufficient to support the revocation of her suspended sentence. In Ground I Thompson alleged specifically that the revocation was based upon improper hearsay evidence, and in Ground III she argues that the revocation was based upon insufficient evidence as a whole. For the same reasons cited in Ground I, the Court holds that the finding of the OCCA was not arbitrary or capricious or lacking a basis in the record. Accordingly, Thompson's Ground III is DENIED.

**Ground IV:  Victim Impact Testimony**

Thompson challenges the trial court's admission of victim impact testimony during the sentencing phase of her revocation proceedings. She raised this claim on appeal arguing that introduction of victim impact statements was proper only in the sentencing phase of her underlying manslaughter case. She thus argued that the admission of victim impact testimony during the revocation sentencing was improper and an abuse of discretion. She argued alternatively that the victim impact testimony of John Bridgeman (the victims' brother and uncle) and Kenneth Mashore (the victims' husband and father) was inflammatory and contained improper statements (Dkt. 24-1, pp. 31-32).

The OCCA rejected both of Thompson's arguments, finding no legal basis for disqualification of victim impact statements in revocation proceedings and no support in the record to show that the revocation judge relied on improper or inadmissible evidence.

13

The Court further noted that Thompson requested preparation of a presentence investigation report. Under Oklahoma law, presentence investigation reports "shall include victim impact statements" (Dkt. 24-4, pp. 8-9).

As stated above, federal habeas relief does not lie for errors of state law. *See Estelle v. McGuire*, 502 U.S. at 68; *Leatherwood*, 861 F.3d at 1043. Thus, to the extent that Thompson is challenging the admission of victim impact testimony as improper under Oklahoma law, there is no relief available for such an error on habeas review unless there is a showing that the admission was so fundamentally unfair as to constitute an independent due process violation. *Id., see also Lewis*, 497 U.S. at 780.

Thompson has made no showing that her due process rights were violated by the admission of the victim impact testimony. At the end of the revocation hearing, Thompson told the trial judge that she would like a presentence investigation report prepared. Under Oklahoma law, victim impact testimony is considered in preparing a presentence investigation report. Moreover, Thompson was represented by counsel at the sentencing hearing. Her attorney made no objection to the testimony. Finally, the trial court based the revocation upon the evidence presented at the hearing. There is no support in the record that the victim impact testimony so infected the judgment of the trial court as to violate due process. As stated above, the revocation was supported by sufficient factual evidence and was not contrary to law. Accordingly, Thompson's Ground IV is DENIED.

## Ground V:  Ineffective Assistance of Counsel

In her final claim, Thompson argues that she received ineffective assistance of counsel in violation of her statutory and constitutional rights. The OCCA denied Thompson's argument because the Court had already determined that the first four claims

14

on appeal were meritless. As such, Thompson could not reframe meritless claims under the umbrella of ineffective assistance of counsel. Respondent argues that Thompson has not shown by a preponderance of the evidence that she is entitled to relief on the ineffective assistance of counsel claim. Thus, Respondent argues, she has failed to state a claim upon which relief could be granted and her claim is therefore waived (Dkt. 24, p. 29).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged standard for analyzing claims of ineffective assistance of counsel on habeas review. First, the defendant must demonstrate that that her attorney's performance was deficient. Second, the defendant must demonstrate that the alleged deficient performance prejudiced her defense. *Id.* at 687. Under the first prong, a defendant must show that her attorney's conduct fell below "an objective standard of reasonableness." *Id.* at 688. The Court presumes that counsel's conduct falls within the acceptable range of reasonable professional assistance. *Id.* at 689. To overcome this presumption a defendant must show that the alleged error could not be considered "sound trial strategy." *Id.*

Even if a defendant demonstrates an objective attorney error, there is no constitutional violation unless she also shows she was prejudiced by the error. *See Strickland*, 466 U.S. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id.*

The Court agrees that Thompson presents no underlying facts to support her claim of ineffective assistance of counsel in her habeas petition. Liberally construing the petition as this Court is directed to do, *see Estelle v. Gamble*, 429 U.S. at 106, and giving Thompson

15

the benefit of the doubt, the Court presumes she is alleging that her counsel acted outside the range of reasonable professional conduct at her revocation proceedings on the four substantive claims raised in Grounds I through IV of the petition.

This is problematic for Thompson in two ways. First, the Court has already determined that there were no constitutional violations raised in Grounds I through IV. Thus, Thompson is unable to meet the *Strickland* standard of prejudice. Second, Thompson has included no allegations of specific actions by her attorney that fell below reasonable professional standards. Thompson has made no allegations that would support a finding under either *Strickland* prong. She has not made out a viable claim of attorney error, and she has not demonstrated that her defense was so prejudiced that its outcome would have been different absent attorney error.

The Court thus finds that the OCCA's determination that Thompson received adequate representation by her attorney at the revocation proceedings was not arbitrary and capricious so as to violate Thompson's due process guarantees. Accordingly, Ground V of the petition is DENIED.

## CONCLUSION

Accordingly, based on all the foregoing,

IT IS HEREBY ORDERED that the petition be construed as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241.

IT IS FURTHER ORDERED that Amanda Thompson's Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED, and Thompson is DENIED a certificate of appealability.

IT IS SO ORDERED this 29th Day of October, 2020.

Ronald A. White
United States District Judge
Eastern District of Oklahoma